```
 1            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
 2                    WESTERN DIVISION

 3

 4   LANDON EARL THOMAS                          PLAINTIFF

 5   VERSUS              CIVIL ACTION NO. 5:24-CV-00035-DCB-LGI

 6   PIKE COUNTY, MISSISSIPPI                    DEFENDANT

 7

 8                       OMNIBUS HEARING
 9        BEFORE THE HONORABLE LAKEYSHA GREER ISAAC,
              UNITED STATES MAGISTRATE JUDGE,
10                     MAY 14, 2025,
                  THAD COCHRAN COURTHOUSE,
11                 JACKSON, MISSISSIPPI

12

13

14
     APPEARANCES:
15
     FOR THE PLAINTIFF:    LANDON EARL THOMAS, PRO SE
16
     FOR THE DEFENDANTS:   KEVIN J. WHITE, ESQ.
17                         WILLIAM BOYD, ESQ.

18

19

20

21
     REPORTED BY:
22
         CANDICE S. CRANE, RPR, RCR, CCR #1781
23       OFFICIAL COURT REPORTER
         501 E. Court Street, Suite 2.500
24       Jackson, Mississippi  39201
         Telephone:  (601)608-4187
25       E-mail:  Candice_Crane@mssd.uscourts.gov
```

1

**TABLE OF CONTENTS**

2   Style and appearances.................................   1

3   Examination by the Court.............................   3

4   Examination by Mr. White............................. 17

5   Certificate of Court Reporter........................ 27

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    IN OPEN COURT, MAY 14, 2025

 2

 3          THE COURT:  All right.  Good morning.  You all may be

 4     seated.  All right.  We can go ahead and begin then.

 5          We are now on the record in the matter of Landon Earl

 6     Thomas versus Pike County, Case Number 5:24-CV-35-DCB-LGI.

 7          And, sir, are you Mr. Thomas?

 8          THE PLAINTIFF:  Yes, ma'am.

 9          THE COURT:  All right.  Mr. Thomas, I -- would you

10     stand for a moment and raise your right hand for me?

11          Do you solemnly swear or affirm the testimony you

12     will give today will be the truth, the whole truth, and

13     nothing but the truth, so help you God?

14          THE PLAINTIFF:  Yes.  Yes, ma'am.

15          THE COURT:  Okay.  Thank you, sir.  You're now under

16     oath, and you may be seated.

17          Let's have introductions of counsel before we go any

18     further.  Counsel for the defense, Mr. White.

19          MR. WHITE:  Good morning, Judge.

20          THE COURT:  Good morning.

21          MR. WHITE:  Kevin White on behalf of Pike County and

22     the municipal defendants, and I'm also here along with my

23     co-counsel, William Boyd.

24          THE COURT:  Okay.  Thank you so much.

25          All right.  So we are here today for what is known as
```

1   an omnibus hearing.  And, Mr. Thomas, have you ever

2   participated in an omnibus hearing before?

3          THE PLAINTIFF:  No, ma'am.

4          THE COURT:  Okay.  So I'll explain to you what it is

5   and what we're going to do today.  So this is an opportunity

6   for the Court and for counsel for the defense, Pike County,

7   to learn a little more information about your case.  It's

8   your opportunity to explain your case in a little more

9   detail and an opportunity for you to tell us what happened,

10   so we can learn more.

11          So today is not a trial of your case.  We're simply

12   here to learn about the facts of your case and try to

13   clarify the nature of some of your complaints.  So that's

14   our purpose here today.

15          Oh, I turned my mic off, I'm sorry.

16          I'm going to also explain to you a little bit about

17   the overall process, and then I'm going to ask you a few

18   questions, and then I'm going to give counsel for the

19   defendants an opportunity to ask you some questions as well.

20          So do you understand so far?

21          THE PLAINTIFF:  Yes, ma'am.

22          THE COURT:  Okay.  Now, I have not previously

23   introduced myself, but my name is LaKeysha Isaac.  I'm a

24   United States Magistrate Judge, and I am the magistrate

25   judge that is assigned to your case.  So in federal court,

 1   there are two judges that are assigned to every case; one

 2   judge is the magistrate judge, and that is me, and the other

 3   judge is the district judge.  In your case, the district

 4   judge assigned is Senior District Judge David Bramlette, who

 5   is in Natchez.

 6       And so before we get to the main part of your

 7   hearing, I want to talk to you about a few housekeeping

 8   matters.  The first one is to determine whether the parties

 9   are going to consent to magistrate judge jurisdiction, but

10   first, let me explain to you what that is so you know what

11   I'm talking about.

12       Now, then as I said, there are two judges assigned to

13   every case, and right now, there are two judges assigned to

14   your case.  The parties do have the right to consent to

15   magistrate judge jurisdiction, and if you do that, that

16   essentially would mean that I'd be the only judge on your

17   case.  If you don't consent, that's totally fine.  It's

18   completely your right as well as the right of the

19   defendants.

20       If you don't consent, I will still be writing the

21   opinions in the case, and they would be what is known as

22   reports and recommendations.  I'd write a recommendation to

23   the district judge on the rulings that would need to be made

24   in the case, and Judge Bramlette would either adopt my

25   ruling or not adopt my ruling.  And if he didn't adopt it,

1    he would write his own opinions.

2        If the parties do consent to magistrate judge

3    jurisdiction, that means we'd skip the step of me writing a

4    recommendation and I would just write the opinion directly.

5    If you did consent, I'd apply the same rules of evidence,

6    the same rules of civil procedure, and all of the same law

7    that Judge Bramlette would apply.  If I made a decision that

8    you disagreed with, you could then appeal my decision to the

9    Fifth Circuit Court of Appeals just like you could or would

10   appeal a decision of Judge Bramlette.  So it's really up to

11   the parties as to how you'd like to proceed.

12       The only real difference, to be quite honest, is if

13   you commit to magistrate judge jurisdiction, it may move a

14   little bit faster, because we'd cut out the step of having

15   to do a report and recommendation.  And generally, there are

16   more dates available for trial with a magistrate judge's

17   calendar in comparison to a district judge.  So that's a

18   long explanation, but I wanted to be sure that you

19   understand what it means to consent.

20       Do you have any questions about what it means to

21   consent?

22       THE PLAINTIFF:  Yes, ma'am.  This is my first time

23   with all this --

24       THE COURT:  Sure.

25       THE PLAINTIFF:  -- any of these hearings, and I don't

1    understand none of this stuff.  I've asked them to -- I've
2    asked for, like, help, and I don't -- I don't have no help.
3          THE COURT:  Okay.  Is there a particular part of the
4    consent procedure that you don't understand and that you
5    need me to explain again?  What I've just explained to you
6    about having two judges --
7          THE PLAINTIFF:  Yes, ma'am.
8          THE COURT:  -- and you have the right to choose
9    whether you want to keep going with two judges or whether
10   you want to go forward with one judge, is there a particular
11   part of that you want me to explain to you again?
12         THE PLAINTIFF:  I don't know which one to choose.  I
13   don't -- I don't know.
14         THE COURT:  Okay.  Now, that's entire -- now, that
15   part I can't help you with.  It's entirely up to you to make
16   a determination as to whether you want to consent or not.
17   And as I said, the Court has no preference either way.
18         So if you decide to consent and the defendants do,
19   then we'll move forward that way.  But if you don't want to
20   consent, there is -- it's no problem if you don't; I promise
21   you.
22         THE PLAINTIFF:  Okay.  It takes longer if I don't
23   consent?
24         THE COURT:  It generally can be a little bit, but not
25   much.  It's not a significant delay.  We try to move --

1          THE PLAINTIFF:  Oh, okay.

2          THE COURT:  -- pretty quickly.  So if you didn't

3    consent, it would probably take, on average, 15 to 18 months

4    is how long a case takes to get from start to finish

5    usually.  In consent cases, it probably takes a year.  So

6    it's really not much difference at all timewise, and so it's

7    entirely up to you, sir.

8          THE PLAINTIFF:  Okay.

9          THE COURT:  All right.  And so at this time, I need

10   to ask you:  Do you consent to magistrate judge jurisdiction

11   in your case?

12         THE PLAINTIFF:  And the magistrate judge, that would

13   be you?

14         THE COURT:  That's me, yes, sir.

15         THE PLAINTIFF:  And then you'd be my only judge?

16         THE COURT:  Yes, sir, I would be.

17         THE PLAINTIFF:  Yes, ma'am.  Yes, ma'am.

18         THE COURT:  Okay.  Thank you, sir.

19         Mr. White, do the defendants consent to magistrate

20   judge jurisdiction?

21         MR. WHITE:  No objection, Judge.  We consent.

22         THE COURT:  Okay.  Thank you.

23         Now, we are going to give you, Mr. Thomas -- I think

24   we mailed this to you already, but we have another copy in

25   here for everyone.  And so we're going to give you a form

1    that indicates that you consent to magistrate judge

2    jurisdiction.

3         THE PLAINTIFF:  Okay.

4         THE COURT:  All right.  Mr. Thomas, we have another

5    matter I want to talk to you about before we get going and

6    talking about the case.  The other thing I want to talk to

7    you about and explain to you about is the court's three

8    strikes procedure.

9         Are you aware of the three strikes procedure?

10        THE PLAINTIFF:  Yes.  Yes, ma'am.

11        THE COURT:  Okay.  So I'm going to still explain to

12   you a little bit, give you the Court's definition of it to

13   be sure that we're on the same page.

14        So that procedure provides that if you file three or

15   more lawsuits while detained and those are deemed to be

16   frivolous, malicious, or failing to state a claim, then you

17   would not be able to pursue IFP status in any other

18   lawsuits, unless there's some kind of threat of serious

19   immediate harm to you.

20        You'd still be able to bring a suit, but you wouldn't

21   be able to do it under IFP status once you have that three

22   strikes.  Do you understand that?

23        THE PLAINTIFF:  Yes, ma'am.

24        THE COURT:  Okay.  And now that you understand the

25   three strikes procedure, do you want to move forward with

1  your lawsuit today?

2          THE PLAINTIFF:  Yes, ma'am.

3          THE COURT:  Okay.  Thank you, sir.

4          All right.  So those are kind of the background

5  questions that I needed to ask you, and so now we'll move

6  into the more substantive part of your hearing where I'm

7  going to talk to you more and glean from you the facts of

8  what happened in your case.

9          Now, I did have a chance to review your file, and I

10  reviewed the whole file prior to coming in here today.  And

11  I understand that this particular case is related to -- is

12  claims regarding your medical care for a broken arm during

13  your detention at Pike County.

14          Now, I do know that you have a different case that

15  involves the general conditions at the jail, and I'm not the

16  judge on the case.  So that's a whole different case with a

17  different judge, so we're not going to talk about that case

18  today.  Okay?

19          THE PLAINTIFF:  Yes, ma'am.

20          THE COURT:  We're going to focus on the facts related

21  to the one that's in front of me.

22          THE PLAINTIFF:  Okay.

23          THE COURT:  So at this time, I want to give you an

24  opportunity to tell me in your own words why you are suing

25  Pike County as it relates to the broken arm.

1          THE PLAINTIFF:  Because I stayed in -- I stayed in

2     Pike County Jail for ten days without no medical care, with

3     no pain medicine, no nothing.  Nobody seen -- they --

4     they -- I had a psych doctor appointment, so I went to my

5     psych doctor appointment, and I talked to the psych doctor.

6          I said, psych doctor, my arm hurts.  She was like --

7     she looked at it, she felt it.  She was, like, it's feel

8     like it's broke.

9          I've been asking the nurse.  I've been telling the

10    nurse at the county jail that my arm was hurting, that's

11    it's been hurting.  She said nothing about it.  She said --

12    she was, like, oh, you might have sprained it, so I'm

13    like --

14          THE COURT:  Let me back you up just a little bit,

15    Mr. Thomas.  Now, in my notes I have that this happened

16    on --

17          THE PLAINTIFF:  February 19.

18          THE COURT:  -- February 19th, 2024; is that correct?

19          THE PLAINTIFF:  Yes, ma'am.

20          THE COURT:  Okay.  So how did you break your arm?

21          THE PLAINTIFF:  Defending myself with -- it's called

22    a -- it's called a -- when you -- when you block -- when you

23    block and they hit you with a stick, a broomstick or

24    something, yes, ma'am.

25          THE COURT:  Okay.  So you were in an altercation --

1          THE PLAINTIFF:  Yes, ma'am.

2          THE COURT:  -- and your arm was broken as a result --

3          THE PLAINTIFF:  By another inmate, yeah.

4          THE REPORTER:  Please let the judge finish before you

5     start to answer for me, please.

6          THE PLAINTIFF:  Okay.  I'm sorry.

7          THE COURT:  I'm breaking the number one rule.  The

8     number one rule in court is don't talk over each other --

9          THE PLAINTIFF:  I'm sorry.

10          THE COURT:  -- so the court reporter can get down

11     what we're saying.  I'm guilty of it, too.  So we'll slow

12     down a little bit, so that we can be sure that Ms. Crane is

13     able to get everything while we're talking.  Okay?

14          THE PLAINTIFF:  Yes, ma'am.

15          THE COURT:  All right.  So you were telling me that

16     you were involved in an altercation, and that during the

17     course of that altercation, your arm was broken?

18          THE PLAINTIFF:  Yes.  Yes, ma'am.  It was broken.  It

19     was broken.  And when I went to the psych doctor, she told

20     me to go get it x-rayed.  They took me to go get x-rayed,

21     that's how they knew my arm was broke, and they took me

22     straight back in the jail.  And they didn't give me Tylenol,

23     no Ibuprofen, no nothing.  It just -- and ten days later,

24     they took me to the emergency room to the -- to the doctor

25     ten days later.

```
 1          THE COURT:  Okay.  So once you realized that your arm
 2    had been injured, did you report that --
 3          THE PLAINTIFF:  Yes, ma'am.
 4          THE COURT:  -- to anyone?
 5          THE PLAINTIFF:  To the guards, yes, ma'am.
 6          THE COURT:  Okay.  And when would that have happened,
 7    the first time you reported it to someone?
 8          THE PLAINTIFF:  Early -- early in that morning when
 9    the trays came in, when the breakfast trays came in.
10          THE COURT:  Okay.  So that was the same day?
11          THE PLAINTIFF:  Yes, ma'am.  Well -- well,
12    February 19th, that's -- that's at late night, early in the
13    morning on the 20th.
14          THE COURT:  Okay.
15          THE PLAINTIFF:  Yes, ma'am.
16          THE COURT:  All right.  And so the 20th, you reported
17    that.  And then from my notes, you wrote to me that you saw
18    a doctor about your arm on February 29th --
19          THE PLAINTIFF:  Yes.
20          THE COURT:  -- is that correct?
21          THE PLAINTIFF:  Yes, ma'am, 29th.
22          THE COURT:  Okay.  So what happened between the 20th
23    and the 29th from your perspective?
24          THE PLAINTIFF:  Nothing.
25          THE COURT:  Okay.
```

1          THE PLAINTIFF:  Nothing.  I was in the county -- I
2     was in the county jail suffering, just suffering.
3          THE COURT:  Who did you see on the 29th?
4          THE PLAINTIFF:  I think they took me to the
5     Southwest -- to the Southwest Hospital.  I'm pretty sure
6     it's the Southwest Hospital.
7          THE COURT:  Okay.  And what kind of treatment were
8     you given at Southwest?
9          THE PLAINTIFF:  They gave me a cast.  They gave me a
10    cast finally.
11         THE COURT:  Okay.  And were you given any
12    medication --
13         THE PLAINTIFF:  Pain medicine, yes, ma'am.  Pain
14    medicine that I couldn't receive, but they gave me Ibuprofen
15    800s.
16         THE COURT:  Okay.  And you began taking that
17    Ibuprofen once you received it on the 29th?
18         THE PLAINTIFF:  No.  It was -- it was later than
19    that.
20         THE COURT:  Okay.  I have a note of March 2nd; is
21    that correct?
22         THE PLAINTIFF:  Yes, it might be.  It might be.  It
23    sounds -- it sounds about right.
24         THE COURT:  All right.  Now, okay.  Is there anything
25    else that you want to tell me related to your arm?

1          I know the defendants are going to have questions for

2    you, and I may have some more following their questions, but

3    I wanted to hear from you in your own words what happened.

4          THE PLAINTIFF:  You said -- you said -- what am I

5    supposed to do?

6          THE COURT:  Do you have anything else you want to

7    tell me regarding your arm and the treatment that you may

8    have gotten or not gotten for it?

9          THE PLAINTIFF:  I think I could -- I could say -- say

10   why they wouldn't take me to the hospital --

11         THE COURT:  Yes, sir.

12         THE PLAINTIFF:  -- but I don't -- I don't -- I would

13   say that because all the problems that I've had with the --

14   with the staff, that's why they don't take me to the

15   hospital.  That's why they were letting me suffer back there

16   like they did.

17         THE COURT:  Okay.  You've told me the treatment that

18   you got.  What treatment do you think you should have had?

19         THE PLAINTIFF:  From the -- from the jump?

20         THE COURT:  Yes, sir.

21         THE PLAINTIFF:  I should have seen a doctor right

22   away immediately.  That's a broken arm.  It's a broken --

23   it's -- it's a serious medical need.

24         THE COURT:  Okay.  All right.  And now a couple of

25   background questions.  So you are currently at SMCI in

1    Leakesville?

2          THE PLAINTIFF:  Yes, ma'am.  Yes, ma'am.

3          THE COURT:  Okay.  And your tentative release date is

4    2034; is that correct?

5          THE PLAINTIFF:  I don't know.

6          THE COURT:  Okay.  And you're charged with -- your

7    underlying charge is possession of a firearm by a convicted

8    felon?

9          THE PLAINTIFF:  Yes, ma'am.

10          THE COURT:  And that was from Pike County?

11          THE PLAINTIFF:  Yes, ma'am.

12          THE COURT:  You were sentenced to ten years?

13          THE PLAINTIFF:  Yes, ma'am.

14          THE COURT:  Okay.  All right.  I think those are all

15    of kind of the preliminary questions I have for you.  The

16    defendants are going to likely ask you some questions, and

17    after that time, I may have some additional ones.  But I'm

18    going to, at this time, turn it over to Mr. White and his

19    co-counsel for any questions they may have.

20          MR. WHITE:  Thank you, Judge.

21          THE COURT:  Yes.

22          MR. WHITE:  With the Court's indulgence, do you mind

23    if I keep my seat while I ask him?

24          THE COURT:  Oh, totally fine.

25          MR. WHITE:  Thank you, Judge.

```
 1          Mr. Thomas, if I understand you correctly, you
 2   disagree with the treatment you received from Pike County.
 3          Is that fair to say?
 4          THE PLAINTIFF:  Yes, sir.
 5          THE COURT:  Okay.  But they did treat you?
 6          THE PLAINTIFF:  I didn't receive -- no, they didn't.
 7   They did not, for ten days, no.  I was --
 8          MR. WHITE:  I'm not talking about the ten days.  I
 9   mean, after the ten days --
10          THE PLAINTIFF:  After the ten days, they gave me my
11   medicine I'm supposed to get.
12          MR. WHITE:  Okay.  Let's slow down, because we're
13   going to destroy the court reporter here.  Let me ask my
14   questions and finish, if you don't mind, and I'll try to let
15   you finish your response before I go.  Okay?
16          THE PLAINTIFF:  Okay.
17          MR. WHITE:  So I understand your testimony about the
18   ten days.  After the ten days, Pike County took you for
19   medical treatment; correct?
20          THE PLAINTIFF:  Yes.
21          MR. WHITE:  Okay.  Now, I think you testified that
22   you were diagnosed with a wrist issue on February 20th of
23   2024?
24          THE PLAINTIFF:  Yes.
25          MR. WHITE:  Okay.  How did that diagnosis happen?
```

1          THE PLAINTIFF:  The doctor --

2          MR. WHITE:  Right.

3          THE PLAINTIFF:  -- the -- the -- the psych doctor.

4          MR. WHITE:  Okay.  And how did you get to that psych

5    doctor?

6          THE PLAINTIFF:  Through request forms -- through

7    request forms -- request forms.  I got them all in here.

8          MR. WHITE:  You were in custody when you got to the

9    psych doctor on February 20th; correct?

10          THE PLAINTIFF:  Yes, sir.

11          MR. WHITE:  And do you recall having a diagnostic --

12    do you recall having an x-ray on February 20th --

13          THE PLAINTIFF:  Yes.

14          MR. WHITE:  -- 2024?

15          THE PLAINTIFF:  Yes.

16          MR. WHITE:  Okay.  And as you sit here today, are you

17    aware that that x-ray is ultimately what determined the

18    extent of your issue to your wrist?

19          THE PLAINTIFF:  Yes.

20          MR. WHITE:  Okay.  So you wouldn't say that Pike

21    County ignored your -- your wrist issues, would you?

22          THE PLAINTIFF:  Yes, I would.

23          MR. WHITE:  Okay.  So taking you to get an x-ray the

24    same day is ignoring your wrist issue?

25          THE PLAINTIFF:  They didn't take me -- they didn't

1    take me to go get an -- to get an x-ray.  The nurse -- the

2    other nurse told them to take me to go get x-rayed.

3         MR. WHITE:  That's a fair response.

4         THE PLAINTIFF:  Yeah.

5         MR. WHITE:  But you were in the custody of Pike

6    County when that happened; right?

7         THE PLAINTIFF:  Yes.

8         MR. WHITE:  Okay.  Has any doctor told you that you

9    suffered any harm, additional harm, different harm due to

10   the delay between the x-ray and this treatment on -- ten

11   days later as you've testified to?

12        THE PLAINTIFF:  Has any doctor told me that?  No.

13        MR. WHITE:  Okay.  Judge, I believe that's all I

14   have.

15        THE COURT:  Okay.  Mr. Thomas, I failed to ask you,

16   what were the dates that you were -- in their entirety that

17   you were in custody at Pike County?  When did you go in, and

18   when were you transferred?

19        THE PLAINTIFF:  October the 3rd, 2023, and October

20   the -- I left October the 4th, 2024.

21        THE COURT:  Okay.  All right.  Thank you, sir.  I

22   appreciate it, and following the questions, and I appreciate

23   you for answering the questions that have been given to you

24   by defense counsel.

25        Is there anything else you want to say regarding your

1  claim?

2       We're going to talk a little bit now about witnesses

3  and exhibits, et cetera, but is there anything else you want

4  to say regarding your case?

5       THE PLAINTIFF:  I'm ready for you to ask me

6  questions.

7       THE COURT:  Okay.

8       THE PLAINTIFF:  Yeah.

9       THE COURT:  Okay.  Thank you.  I appreciate your

10 cooperation.

11      All right.  In getting ready for today, the Court

12 issued an omnibus -- or an order setting omnibus hearing,

13 which asked the parties to do certain things in advance of

14 the hearing.  The first thing that I want to talk to you

15 about is the discovery.

16      The defendants, do you all have documents or

17 discovery to provide to Mr. Thomas today?

18      MR. WHITE:  We do, Your Honor.  We have documents

19 that have been Bates labeled CLT-THOMAS 00001 through

20 000050 -- 50.  Those documents include plaintiff's jail

21 file, grievances, and his medical records showing treatment

22 for the issue he complains of as well as medication records.

23      THE COURT:  Okay.  Thank you.

24      And, Mr. Thomas, did you bring any documents that you

25 want to provide to the defense?

```
 1          THE PLAINTIFF:  I don't have -- I have, like, request

 2    forms.  I have request forms that I wrote to the nurse

 3    and -- and -- yes, ma'am.

 4          THE COURT:  Okay.  All right.  So if we're -- so at

 5    this time, we're going to exchange documents.

 6          Mr. Thomas, with yours, I presume you probably don't

 7    have copies.  So for that -- do you have copies?

 8          THE PLAINTIFF:  No, ma'am.

 9          THE COURT:  That's for -- those are the only -- those

10    are the only copies that you have of that particular

11    paperwork?

12          THE PLAINTIFF:  Yes, ma'am.  Yes, ma'am.

13          THE COURT:  Okay.  Ms. Spears, will we be able to

14    keep that and get his originals back to him, do you think?

15          MS. SPEARS:  Yes, ma'am.

16          THE COURT:  Okay.

17          MS. SPEARS:  Do you want me to just copy it?

18          THE COURT:  Yeah.  Well, we're probably not going to

19    be able to get our -- the copies done today because it looks

20    like a fairly lengthy set of documents, but --

21          MS. SPEARS:  I can file it and mail him a copy of

22    what's filed.

23          THE COURT:  Okay.  All right.  So we're going to get

24    your documents filed, and so once we file it, we'll get the

25    originals back to you.  And we'll get -- they'll be filed
```

1    for you to access as well, Mr. White.

2          MR. WHITE:  That's fine, Judge.

3          THE COURT:  Okay.

4          MS. SPEARS:  He's got his witness and exhibit list,

5    too.  Do you need to see that?

6          THE COURT:  Yes.  Yes.  Okay.  So next thing we're

7    going to talk about is witness and exhibit list.  It looks

8    like, Mr. Thomas, that you have prepared both for us it.

9    Okay.  So we don't -- they're not as lengthy as I thought,

10   so we'll be able to get that back to you before you leave

11   today.

12         Okay.  Mr. White, do you have a witness and exhibit

13   list for Mr. Thomas?

14         MR. WHITE:  We do, Judge, and I can never recall how

15   this Court proceeds with these.  I can exchange them, or we

16   can file them electronically, whatever the Court prefers.

17         THE COURT:  I think you provide them to --

18         MS. SPEARS:  I'll have to file them.

19         THE COURT:  Yes, we have to file them ourselves.  The

20   quirk of the electronic filing system, there's not a place

21   for lawyers to upload them.

22         MR. WHITE:  Understood.

23         THE COURT:  Yeah.

24         MR. WHITE:  I think that's always the issue.

25         THE COURT:  Yes.  Yes.  All right.  Do you have

1    any -- you've already provided yours, Mr. Thomas?

2         THE PLAINTIFF:  Yes, ma'am.

3         THE COURT:  Okay.  So we're going to get all of this

4    uploaded on the docket and get copies to you all.

5         As to your witness list, of course I haven't had an

6    opportunity to review it yet, but I do want to be sure that

7    you understand how the witnesses work.  In the event that

8    you do have a trial, there is a limit to the number of

9    witnesses that you can have that are inmates.  We limit that

10   to three.  That is for safety concerns for the Court, et

11   cetera.  And so for those three inmate witnesses, if you

12   have three inmate witnesses, the Court will be responsible

13   for getting those persons to your trial.

14        For any free world witnesses that you name on your

15   list, you would be responsible for getting those.  But I do

16   want to be sure that you are aware that you can have no more

17   than three inmate witnesses, and, again, the Court will take

18   responsibility for getting them here just like we got you

19   here today.

20        Okay.  Do you understand that?

21        THE PLAINTIFF:  Yes, ma'am.

22        THE COURT:  Okay.  All right.  As far as the next

23   step that we'll do is to enter what's known as an omnibus

24   order, which sets certain deadlines in the case.  We already

25   set a deadline regarding motions regarding exhaustion, and

1    the deadline for that is 30 days from today's hearing.

2         And so, Mr. White, I presume you probably would like

3    a transcript of the hearing?

4         MR. WHITE:  We do, Judge.

5         THE COURT:  Okay.  So, Ms. Crane, the defendants are

6    seeking a transcript of today's hearing.

7         So that deadline will be 30 days from today, and then

8    we will set other deadlines in the case, including deadlines

9    for discovery and other things.  And so that will be

10   forthcoming, that will be the next step.

11        Do either of you have any questions about anything

12   before we conclude the hearing?

13        Mr. Thomas, do you have any questions, sir?

14        THE PLAINTIFF:  Yes, ma'am.  Can I get a copy of all

15   this?  Can I get a transcript, too?

16        THE COURT:  I do think there is a charge for the

17   transcript.  So you wouldn't be able to get the transcript

18   without paying for it.  But you can make a request, and

19   Ms. Crane will tell you how much it costs.

20        THE PLAINTIFF:  Okay.

21        THE COURT:  Okay.  All right.  Anything else that

22   you --

23        THE PLAINTIFF:  No.  No, ma'am.

24        THE COURT:  Okay.  Thank you.  Well, I appreciate you

25   all's time this morning.  That will conclude our hearing.

1          MR. WHITE:  Judge, I apologize for interrupting --

2          THE COURT:  No, that's okay.

3          MR. WHITE:  -- I do have one final issue.

4          THE COURT:  Yes.

5          MR. WHITE:  But for the record, I -- if the Court

6    approves, I'm going to produce the Bates-labeled documents

7    that I referenced earlier to the plaintiff at this time.

8          THE COURT:  Okay.

9          MR. WHITE:  And also because the plaintiff has put

10   his medical condition at issue, I have a HIPAA release,

11   HIPAA authorization that I'd like him to execute before he

12   leaves.

13         THE COURT:  Sure.  We have a court form for the HIPAA

14   authorizations that we use in 1983 cases, so Ms. Spears has

15   it issued.  We'll get Mr. Thomas to sign it.

16         MR. WHITE:  That works just fine, Judge.

17         THE COURT:  All right.  Mr. Thomas, because your case

18   involves medical care, the defense has the right to seek

19   medical records related to your care, and so that is a form

20   that the Court uses in all of its cases that involve

21   questions regarding denial of medical care.

22         All right.  Anything else?

23         MR. WHITE:  Not from the defendants, Judge.

24         THE COURT:  Well, thank you all.  We will stand

25   adjourned in Thomas versus Pike County.

1          Mr. Thomas, you may be excused.

2          Thank you all so much for your assistance today.

3     ************************************************************

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **CERTIFICATE OF COURT REPORTER**

2

3          I, Candice S. Crane, Official Court Reporter for the

4    United States District Court for the Southern District of

5    Mississippi, do hereby certify that the above and foregoing

6    pages contain a full, true, and correct transcript of the

7    proceedings had in the forenamed case at the time and place

8    indicated, which proceedings were stenographically recorded

9    by me to the best of my skill and ability.

10          I further certify that the transcript fees and format

11   comply with those prescribed by the Court and Judicial

12   Conference of the United States.

13          THIS, the 4th day of June, 2025.

14

15          /s/ Candice S. Crane, RPR, RCR, CCR

16                     Candice S. Crane, RPR, RCR, CCR #1781
                       Official Court Reporter
17                     United States District Court
                       Candice_Crane@mssd.uscourts.gov
18

19

20

21

22

23

24

25